## City of Irvine v. Gallagher.

(Decided June 21, 1929.)

HUNTER M. SHUMATE for appellant.

ROBERT R. FRIEND and JOHN W. WALKER for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

Until a few years ago there was a small branch or natural drain running in a southerly direction through the city of Irvine north of Broadway. From time to time

the property owners through whose lots this drain passed put in an 18-inch tile and covered it, building houses on the lots. As the streets were constructed, the city of Irvine placed similar tiling in the channel under the streets and alleys, and installed appropriate manholes and inlets. This is called in the record the "private sewer." A large culvert was built by the city across Broadway. In 1923, in the construction of that street west of this point, a sewer was installed by the city to carry off the surface water (called the storm sewer), the two converging on the north side of Broadway and emptying into a spillway at the culvert. Iron gratings were placed at intervals along Broadway to admit the water. The appellee, Gallagher, owned property on the south side of Broadway at the southern end of the culvert. In 1921, before either of the above sewers were constructed, he had erected a store building over the branch, which ran in a concrete channel through the basement. He also had another store and apartment building on this lot in which he and others resided.

The appellee has recovered damages in the sum of $500 against the city because of a nuisance maintained by the municipality in permitting or not preventing the use of both sewers for sanitary purposes, whereby garbage, sewage, dead animals, and other filth were carried into and through his basement. The city seeks a reversal of the judgment, first, on the ground that it was entitled to a verdict under a peremptory instruction; but, if not, then because the court erred in not excluding from the jury all evidence pertaining to the private sewer and relieving it of responsibility therefor. Complaint is also made of the refusal to give an offered instruction.

It is clearly shown that there came through the Broadway culvert onto plaintiff's premises the sewage described, which gave rise to foul odors and an unsanitary and unhealthful condition. There is material proof that this condition caused a depreciation in the value of his property. The question of the case is whether the city may be held responsible.

Plaintiff's evidence respecting the liability of the city, in addition to the facts above stated relating to the construction of the two sewers, was that the toilets and bathrooms of several residences on each sewer were connected to them, although in violation of a city ordinance enacted in April, 1922, making it unlawful and punishable by a fine for any one "to tap and connect any city sewer

in the city of Irvine with a line running from a bathroom or sink without first obtaining permission to do so from the city council.'' From time to time the mayor and members of the council were notified in writing that sewage was coming through the Broadway culvert onto plaintiff's property, and his premises were inspected by city officers. The matter was the subject of discussion by the council, and official cognizance was taken on July 22, 1925, of a complaint registered by an owner of property below appellee. By resolution it was ordered that certain named persons, the subjects of the complaint, should be notified to disconnect from the private sewer, or that they would be proceeded against criminally and civilly. It is shown that one of the parties, pursuant to a letter from the city attorney, did so, but it is not shown that any other action was taken, and the refuse continued to be carried through the sewer.

On one occasion the mayor and a member of the city council loaned the fire hose to some of the citizens with which to flush out the private sewer. These officers were present when an opening was made in the tiling in an alley and they saw the character of filth which was then washed out of this sewer onto plaintiff's property. On another occasion, when there was lodged with the mayor an objection to a connection being made to this private sewer from one of the houses, the mayor specifically granted permission for this to be done, but it was with the understanding, as he says, that only water from the roof of the house should enter it.

As to the storm sewer, plaintiff showed that there were several houses connected to it as ascertained by him from tiling visible from the street. He does not prove that these connections led from the interior of the buildings, except that the septic tank of one residence was connected through an alley with the sewer. The city maintained that these were simply connections of down spouts from the roofs. On the contrary, the plaintiff testified that at the junction with the private sewer, on the street, it could be and was seen that seweage was coming through this storm sewer, and that he notified the city officials of that fact.

The officers of the city admit having received complaints from the appellee as to the conditions, but state that he did not give the name of any one connected with the sewer and thus causing the nuisance. A former mayor admitted that he had seen the filth coming through the sewer, but that he could not find out who was causing

it. This was just before the ordinance was passed prohibiting the connection of toilets or bathrooms with sewers above referred to. The defense of the city was rested on the idea that it was not responsible for the conditions arising from the private sewer, because it exercised no control over it, and had nothing to do with its construction; that the portions under the streets were simply drains for surface water. As to the Broadway sewer, it denied any notice or knowledge of any private connections to it.

Under the facts disclosed, we are of the opinion that the city is liable for the nuisance and resulting damages whether caused by either or both sewers.

The law of the case is stated in 43 C. J. 1138, to be: "If a municipal drain or sewer is so constructed or maintained as to amount to a nuisance the municipality is liable in damages to persons injured thereby. . . . The right to recover applies both to public and private nuisances. . . . Where a stream is adopted by a municipality as a storm water sewer, but subsequently householders in the vicinity, with knowledge of the municipal officers, although without formal leave of the municipality, connect their closets and waste pipes with the sewer, by reason of which it becomes a nuisance, the municipality is liable."

The city is not exonerated because the injury arose from use of a public sewer by individuals who connected their houses with it and discharged sewage into it, if the municipality allows the condition to remain after notice thereof and there is a failure to abate the nuisance. 43 C. J. 1152; 9 R. C. L. 673. Whether or not the facts disclosed in this case were sufficient to fix liability for the nuisance arising from the private sewer on the ground that it was not adopted as a part of the public sewerage system, the fact nevertheless remains that this private sewer did connect with the storm sewer and the city's culvert and sewer running under Broadway; and the further fact that, after receiving notice and numerous complaints of the condition, the city did not abate the nuisance caused in part by the private sewer. It recognized the existence of the nuisance and of its power to abate it by adopting the resolution referred to. The good resolution did not produce results. The officers should have seen that the orders were obeyed or have taken other steps to remove the nuisance.

Except that the claim is as to the private sewer, the facts are not unlike those in City of Henderson v. Robin-

son, 152 Ky. 245, 153 S. W. 224, in which the municipality was held responsible for damages resulting from pollution of a sewer constructed in the channel of a creek for drainage purposes. A city will not be permitted to discharge accumulated filth at the very door and under the house of a citizen without liability for the resulting injury. City of Madisonville v. Hardman, 92 S. W. 930, 20 Ky. Law Rep. 253. The court did not err in submitting the case to the jury.

The instruction offered by the defendant and refused by the court was to the effect that the city should not be held liable for sewage discharged into the private sewer or the natural drain above that sewer. The court properly refused the instruction, and correctly submitted the case.

The judgment is therefore affirmed.